UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN S. BAILEY, JR.,

    Petitioner,

               Case Number: 05-10190
v.               Honorable David M. Lawson

JAN TROMBLEY,

    Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

  The petitioner, Steven S. Bailey, Jr., a state prisoner currently confined at Mound Correctional Facility in Detroit, Michigan, has filed through counsel a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 asserting that he is in custody in violation of his constitutional rights. The petitioner was convicted of first-degree felony murder, Mich. Comp. Law § 750.316(b), assault with intent to murder, Mich. Comp. Law § 750.83, two counts of armed robbery, Mich. Comp. Law §750.529, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Law § 750.227b, on May 9, 1997 following a jury trial in Wayne County, Michigan circuit court. He was sentenced on June 3, 1997 to concurrent prison terms of life without parole for the murder conviction, twenty to thirty years for the assault conviction, and fifteen to twenty-five years for the armed robbery charge, plus a consecutive two-year term for the felony firearm offense. The robbery convictions were vacated by the state appellate court. The petitioner raises three separate claims: prosecutorial misconduct, deprivation of due process, and ineffective assistance of counsel. The petitioner's custodian is Kenneth A. Romanowski, but he was confined at the Saginaw Correctional Facility when he filed his petition, where his custodian was Jan Trombley. The respondent has filed an answer to the petition asserting that it should be dismissed

because the petitioner failed to adhere to state procedural rules in asserting one of his claims and the rest of them lack merit. The Court finds that none of the petitioner's claims warrant habeas relief, and therefore the petition will be denied.

I.

The conviction in this case arises from the robbery of Orlando Hines and Andre Grissom, during which Hines was killed and Grissom sustained a gun shot injury. All this took place late in the evening on July 1, 1996. At trial, Mr. Grissom testified that he and Mr. Hines were having a conversation outside of their apartment complex when they were approached by Alfred Nelson and another man. Grissom could not identify the petitioner as the other gentleman, but he was sure that Mr. Nelson robbed him. Grissom said that the two robbers split up him and Hines; Nelson took Mr. Grissom in one direction and the other assailant took Mr. Hines several feet away in another direction toward a grassy area. As Mr. Nelson was robbing Mr. Grissom of his jewelry, pager, and some telephone numbers, Mr. Grissom heard the other assailant threaten to shoot Mr. Hines if Mr. Hines had no money to steal. Shortly thereafter, Mr. Grissom heard a gun shot. The assailant shot Mr. Hines and turned toward Mr. Grissom to shoot him as well. Mr. Grissom ran away, but he was shot in the arm, thigh, and finger as he made his escape. Grissom testified that he eventually ran back to where he left the robbery scene to find that the robbers and Mr. Hines were gone.

Mr. Grissom sought medical attention for his injuries. Mr. Hines was ultimately taken to Heritage Hospital and subsequently transferred to The University of Michigan Hospital, where he later died from gun shot wounds to the chest and abdomen. Although Mr. Grissom could not identify the petitioner as the individual who shot him and Hines, Nelson pleaded guilty and made

a statement identifying his accomplice as Steven Lockhardt, who was later determined to be Steven Bailey, the petitioner in this case.

At trial, Nelson testified that he did not know who his accomplice was because he was too drunk to remember. In fact, he said he did not even remember committing the robbery himself, although fingerprint evidence placed him at the scene. He said he was pressured into identifying someone at the time of his plea so he could get out from under a mandatory life sentence. He also testified that he had never known the petitioner by any name other than Bailey. When Nelson was recalled at trial as a defense witness, he recanted all of his prior statements and testified that the petitioner was in fact innocent of the crimes.

The jury was unpersuaded by Nelson's denial, however, and found the petitioner guilty. The petitioner pursued a direct appeal with some difficulty in the state courts. Following his conviction and sentencing, the petitioner's appellate counsel failed to file a timely appeal which resulted in the dismissal of his appellate action. *People v. Bailey*, No. 221408, (Mich. App. Ct. Dec. 2, 1999). After a trial court hearing on May 10, 2000 and a finding on June 29, 2000 that the petitioner's appellate counsel provided ineffective assistance, the trial court ordered the petitioner's new appellate counsel to file a claim of appeal with the Michigan Court of Appeal so that the merits of the petitioner's claims could be reviewed. After a dismissal of the appeal due to lack of jurisdiction on August 10, 2000 and denial of the petitioner's motion for rehearing on September 22, 2000, the petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court. The Court decided that in lieu of granting leave to appeal, it would remand the case to the Michigan Court of Appeals "for consideration as on leave granted." *People v. Bailey,* No. 118099 (Mich. July 2, 2002).

The petitioner then raised the following issues in the state intermediate appellate court: (1) whether the prosecutor denied the petitioner a fair trial when he introduced into evidence the guilty plea agreement of the petitioner's alleged accomplice; (2) whether the prosecutor engaged in misconduct when he elicited testimony from the petitioner's alleged accomplice concerning a reward for testifying which included a plea to a lesser included offense in exchange for truthful testimony implicating the petitioner; (3) whether the petitioner was denied a fair trial when the prosecutor introduced hearsay statements of the petitioner's alleged accomplice through a law enforcement official; (4) whether the trial court abused its discretion by denying the petitioner's motion to adjourn trial and his request to obtain substitute counsel; (5) whether the prosecutor engaged in misconduct when he argued during rebuttal that the jury would be evil people if they acquitted the petitioner; (6) whether the petitioner received ineffective assistance of trial counsel when he failed to object to certain trial court errors; and (7) whether the petitioner's conviction and sentence for the two counts of armed robbery should be vacated on double jeopardy grounds. On December 16, 2003, the Michigan Court of Appeals vacated the armed robbery convictions and affirmed the remaining convictions and sentences. *People v. Bailey,* 2003 WL 22961702 (Mich. App. Dec. 16, 2003). The petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same issues presented to the Michigan Court of Appeals (with the exception of the double jeopardy claim), and the state supreme court denied leave to appeal. *People v. Bailey,* 471 Mich. 865, 683 N.W.2d 671 (July 29, 2004) (Table).

The petitioner thereafter filed his federal petition for writ of habeas corpus asserting the following three claims: (1) the prosecutor engaged in misconduct when he elicited testimony from the petitioner's alleged accomplice concerning a reward for testifying, which included a plea to a

lesser included offense in exchange for truthful testimony implicating the petitioner; (2) the trial court abused its discretion by denying the petitioner's motion to adjourn trial and his request to obtain substitute counsel; and (3) the petitioner received ineffective assistance of trial counsel when he failed to object to certain trial court errors.

The respondent has filed an answer to the petition asserting that it should be dismissed because the petitioner has asserted a procedurally defaulted claim and the remaining claims lack merit.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first contends that he is entitled to habeas relief because of the prosecutor's alleged use of Mr. Nelson's plea agreement in an effort to vouch for the credibility of his testimony. The petitioner asserts that the prosecutor's reference to Mr. Nelson's agreement to give truthful testimony in exchange for being charged with a lesser included offense constituted prosecutorial misconduct and the petitioner's due process rights were denied as a result. The respondent contends that the petitioner's prosecutorial misconduct claims are procedurally defaulted because his attorney failed to object to the prosecutor's conduct at trial and the Michigan Court of Appeals relied on counsel's failure to object to determine that the claims were not preserved for appellate review.

The Supreme Court has described doctrine of procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Therefore, although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). The Court deems it more efficient in this case to proceed directly to the merits of the petitioner's claims.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Michigan Court of Appeals reviewed the claim of misuse of the accomplice's plea agreement on the merits, although it applied a plain error standard because the petitioner did not object during trial. The appellate court concluded that the alleged error did not warrant reversal:

> Based on the accomplice's past performance, the prosecutor expected him to attempt to disavow his prior statements and testimony. Therefore, when the accomplice commenced his testimony by admitting that he had committed an armed robbery with another person, but claimed that he could not remember the other person, the prosecutor was justified in reminding him of his agreement to testify truthfully.
>
> Moreover, defendant elicited the fact that the accomplice had agreed to testify truthfully, but also got him to state that his testimony at trial was a lie – as were allegedly, his prior statements to the police and at the plea taking, and his testimony at the preliminary examination. Where a reluctant witness decided to disavow his prior statements and testimony, the prosecutor did not commit misconduct by reminding the witness of his agreement to testify truthfully. Furthermore, because defendant also elicited this information in an effort to show that the witness has lied previously, defendant has failed to demonstrate outcome-determinative plain error.

*People v. Bailey*, 2003 WL 22961702, *1-2.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). The petitioner contends that the prosecutor's questioning amounted to improper vouching when he referenced and discussed Mr. Nelson's plea agreement. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992). Improper vouching also occurs when the prosecutor argues evidence not in the record, *Martinez*, 981 F.2d at 871, or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness' testimony, thereby placing any perceived prestige of the prosecutor's office behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999).

To prevail on his claim of prosecutorial misconduct stemming form the vouching allegations, the petitioner must demonstrate that the prosecutor's misconduct infected his trial with such "'unfairness as to make the resulting conviction a denial of due process.'" *Byrd v. Collins*, 209 F.3d

486, 529 (6th Cir. 2000) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Ibid.* (quoting *Pritchett*, 117 F.3d at 964).

References to a plea agreement may result in improper vouching in some circumstances, but as the Sixth Circuit explained in *United States v. Francis,* 170 F.3d 546 (6th Cir. 1999):

> We have allowed a prosecutor to refer to the plea agreement of a testifying witness. The prosecutor may elicit the testimony about its terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect a defense counsel's use of the agreement to attack the witness's credibility.
>
> The potential for impropriety emerges, however, when a prosecutor explains that there is to be a recommendation to the witness's sentencing court whether the terms of the plea agreement have been adhered to. Because that recommendation is dependent upon whether the witness testifies truthfully, it is easy for a prosecutor to imply, either intentionally or inadvertently, that the prosecutor is in a special position to ascertain whether the witness was, in fact, testifying truthfully.

*Id.* at 550 (internal citations omitted).

After reviewing the record, with special attention focused upon excerpts within the text of the petitioner's habeas petition, the Court finds that the prosecutor's questions regarding Mr. Nelson's plea agreement do not indicate his personal belief in the validity of Mr. Nelson's testimony or imply that the prosecutor had special knowledge of Nelson's veracity. The prosecutor did not suggest that he would recommend that Nelson's sentence be reduced. In fact, as indicated by the court of appeals, it was Nelson's intransigence on the witness stand that prompted the prosecutor to mention the plea agreement. Nelson apparently failed to give testimony consistent with his statements to the police, his preliminary examination testimony, and his plea colloquy. It was Mr. Nelson who volunteered that he could "take that bargain or spend the rest of my life [in prison]," in response to the prosecutor's question. Tr. Vol. II, 5/7/97, at 195-96. The prosecutor followed

with the question, "You made a deal to give truthful testimony to say who did this murder; is that right?" *Id.* at 196. In fact the prosecutor tried to steer Mr. Nelson from the penalty consequences of not complying with the plea agreement by stating:

> I don't want you to answer your question or tell the jury what you want to say. I want you to answer my question, which is, sir, your end of the deal was to tell who was responsible for this murder, wasn't it?

*Id.* at 196-97. Finally, the petitioner also used Nelson's plea arrangement, but to disparage the credibility of Mr. Nelson to the jury. That prompted the Michigan Court of Appeals to observe:

> This was part of defendant's strategy of casting doubt on the accomplice's credibility and showing that he was disavowing the bargain he had made with the prosecutor-a bargain he allegedly made only to escape sentence. This Court will not permit defendant to use the plea agreement at trial to undermine the accomplice's credibility and then complain on appeal that he was prejudiced by its introduction.

*Bailey*, 2003 WL 22961702, *1.

The Court does not find that the prosecutor engaged in conduct that deprived the petitioner of a fair trial. The petitioner's rights under the Due Process Clause were not abridged, and the state appellate court's finding of no violation was not contrary to or an unreasonable application of federal law. Therefore, the court will not grant habeas relief on this issue.

B.

The petitioner next contends that the trial court abused its discretion by denying the petitioner the right to obtain trial counsel of choice by refusing to adjourn the trial. Due to the petitioner's dissatisfaction with his appointed counsel, the petitioner made a trial-day request for an adjournment so that his family could take the time to retain new trial counsel. The trial court denied the petitioner's motion and his appointed counsel proceeded forward with the trial.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This

constitutional right is applicable to the states through the Fourteenth Amendment. *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963)).

"A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Ibid.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However,

> [n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney*, 399 U.S. 42, 53-54 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).

"A motion for new appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court." *United States v. White,* 451 F.2d 1225, 1226 (6th Cir. 1971). The court of appeals cites four factors to consider when assessing a trial court's exercise of discretion in denying a continuation of trial to obtain new trial counsel: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

In this case, the motion for substitution of counsel and the motion for a continuance were untimely, as both issues were raised on the day of trial. Untimeliness has been found when such motions were made the day before trial, *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996), and as far out as two weeks before trial, *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999).

The record establishes that the trial court made an adequate inquiry into the crux of the petitioner's dissatisfaction and trial counsel was allowed an adequate opportunity to address each of the petitioner's concerns and state his position relative to the matter. The trial court found:

> First of all, I am going to deny the motion to adjourn this case. An exam was conducted in November. Mr. Bailey and the family had, had a number of months to obtain counsel. Mr. Dienek is a well-respected and experienced criminal defense attorney. He has convinced me that he has prepared the case, knows the case, and is ready to go.

Tr. Vol. I at 20.

The petitioner stated that his dissatisfaction was three-fold: (1) counsel's failure to file a written motion to quash the information; (2) counsel's failure to provide the petitioner a copy of the preliminary examination transcript and other discovery documents until the days immediately preceding trial; and (3) counsel's failure to discuss his defense and strategy with the petitioner. However, the record reveals that trial counsel was able to present an oral motion to quash. It also appears that counsel provided his client the preliminary examination transcripts and discovery materials and gave the trial court a lengthy explanation about the delay. The petitioner did not dispute counsel's account of what transpired, nor has he set forth how the delay in receiving the materials at issue resulted in deficient representation of counsel. Finally, counsel disputed the petitioner's assertion that they did not have defense strategy discussions.

The court does not find that the state trial judge deprived the petitioner of his Sixth Amendment right to counsel by refusing to delay the trial. This is particularly so since,"given the administrative hurdles and costs involved in ensuring the attendance of the Government's witnesses for trial, the public's interest in the prompt and efficient administration of justice weigh[ed] in favor of denying [the petitioner's] motion to continue." *See United States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004).

The Michigan Court of Appeals held: (1) the petitioner's right to counsel of his choice is not absolute; (2) the petitioner failed to establish a "legitimate reason" to substitute counsel as it was not based upon good cause; and (3) the petitioner's request was untimely. *Bailey*, 2003 WL 22961702, *3. The court then balanced those factors with "the public's interest in the prompt and efficient administration of justice," and found that "the trial court [did not] abuse[] its discretion in denying [the petitioner's] trial-day request for a continuance." *Id.* at *3-4. This Court does not find that the state court unreasonably applied federal law in reaching that conclusion.

C.

The petitioner next asserts that his trial counsel was constitutionally ineffective because the attorney failed to do the following: (1) object to the alleged prosecutorial misconduct involving the introduction of Mr. Nelson's plea agreement; (2) preserve the petitioner's ineffective assistance of counsel claim; and (3) "challenge the trial court proceedings."

To show a violation of the right to effective assistance of counsel, a petitioner must establish first that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient in "counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

The petitioner also must demonstrate prejudice, that is, show that counsel's deficient performance may have altered the results of the trial. *Ibid.* An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Ibid.*

The failure of counsel to preserve objections – in this case to the claim that the prosecutor committed misconduct – is not prejudicial when the state appellate court considers the merits of the petitioners' claim on appeal. *Hartey v. Vaughn*, 186 F.3d 367, 373 (3d Cir. 1999). In this case, the state court of appeals determined that the prosecutor's questioning of Mr. Nelson as to his plea agreement was appropriate in the context of Nelson's uncooperative posture during his testimony, albeit under a plain error standard of review. However, even under a *de novo* review standard, the court of appeals likely would have reached the same conclusion, as would this Court. Therefore, the petitioner is unable to show that he was prejudiced by counsel's failure to object to the prosecutor's line of questioning on Nelson's plea agreement.

The petitioner also asserts that his ineffective assistance of counsel claim was not preserved due to counsel's failure to request a new trial or an evidentiary hearing. But once again, despite the issue not being preserved, the appellate court considered the claim on appeal by reviewing the premise of the petitioner's ineffective assistance of counsel claim when it stated:

> We have rejected the defendant's claims of error, and counsel was not required to make futile objections. *People v. Rodgers*, 248 Mich. App. 702, 715; 645 N.W.2d 294 (2001). Furthermore, counsel's actions are presumed to have been based on trial strategy, and this Court does not second-guess trial counsel regarding matters of trial strategy. *Pickens, supra* at 330. Finally, any minimal prejudice occasioned by the prosecutor's remarks in rebuttal was effectively dissipated by the trial court's admonition that the statements and arguments of counsel were not evidence. *People v. Bahoda*, 448 Mich. 261, 281; 531 N.W.2d 659 (1995). Therefore, defendant has failed to demonstrate a deprivation of his right to effective assistance of counsel.

*Bailey*, 2003 WL 22961702, *5. The Court accepts that assessment as a correct application of the governing law to the facts established by the record in this case. Neither the prosecutor's question nor counsel's reaction (or lack thereof) to it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1995) (internal quotation marks omitted); *see also Fry v. Pliler*, 127 S. Ct. 2321, 2325 (2007); *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007).

Finally, the petitioner's claim that his counsel was ineffective because he failed to "challenge the trial court proceedings" is too vague an assertion upon which to apply the *Strickland* standard. Therefore, the Court finds that the state court's conclusion that defense counsel was not constitutionally ineffective did not result in an unreasonable application of *Strickland*.

III.

For the foregoing reasons, the Court finds that the petitioner has not shown that he is in custody in violation of the Constitution or the laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk#1] is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 24, 2008.

s/Felicia M. Moses
FELICIA M. MOSES